UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC. and HEALTH
OPTIONS, INC.,

    Plaintiffs,

v.

DAVITA, INC. f/k/a DAVITA
HEALTHCARE PARTNERS INC.,

    Defendant.

Case No. 3:19-cv-00574-BJD-MCR

**DAVITA'S REPLY IN SUPPORT OF SUMMARY JUDGMENT MOTION**

DaVita is entitled to summary judgment. Florida Blue's opposition rests on two primary assertions: (1) it was impermissible for members to use CPA to pay premiums; and (2) DaVita systematically waived patient cost-shares. Yet, the undisputed evidence directly contradicts both assertions. Florida Blue does not, and cannot, point to any language in either the Provider Agreement or its member plans forbidding members from using CPA or receiving hardship waivers. Florida Blue does not cite a single instance of any improper cost-share waiver, and mischaracterizes the instances where DaVita was unable to collect cost-shares as systemic waiver. And Florida Blue does not even attempt to dispute the evidence that it was well aware – for years before it filed this lawsuit – that DaVita contributed to AKF, AKF provided CPA to dialysis patients, and Florida Blue's members used CPA to pay premiums. In fact, ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

███████. Moreover, Florida Blue was compensated handsomely under the ACA's risk adjustment program for insuring the patients at issue, and has suffered no damages. DaVita's motion should be granted.

## I. Statement of Undisputed Material Facts ("SOF")

Florida Blue concedes as undisputed DaVita's SOF paragraphs: 1-4 (background on ESRD patients); 5 (Florida Blue is an insurer and not a healthcare provider); 7 ("ACA advances societal goal improving care of disadvantaged patients and patients with pre-existing conditions, including ESRD patients."); 10 (AKF has openly supported ESRD patients for decades); 12 ("AKF does not refer patients to DaVita."); 15-21 (Provider Agreement provisions); 23 ("DaVita provided the dialysis services for which it submitted claim forms."); and 26 ("Florida Blue's member plans do not prohibit members from receiving hardship waivers."). With respect to the following SOF paragraphs that Florida Blue "disputes," it does not meaningfully rebut those paragraphs with actual evidence as required by Rule 56[1]:

6. Florida Blue does not genuinely dispute that there are many reasons ESRD patients would prefer commercial insurance over government insurance.[2]

8. Florida Blue does not dispute that DaVita provided insurance education to patients or that by the time patients express financial hardship and interest in

---

[1] *See generally Dowler v. GEICO Gen. Ins. Co.*, 2021 WL 3563018, at *3 (M.D. Fla. Aug. 12, 2021) ("A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.").
[2] Florida Blue opines that patients are "generally better off enrolling in governmental rather than commercial insurance" and identifies ███████ certain patients purportedly had on commercial insurance, *see* ECF 278 at 4-5, but those statements do not rebut paragraph 6.

2

receiving AKF assistance, they are already treating with DaVita. Instead, Florida Blue cites to 56 pages of the Browne Report to argue (incorrectly, *see* ¶ 29 *infra*) a different point – that patients were "steered," solely for DaVita's financial gain. The documents Florida Blue cites show that the Medicaid-to-Exchange Opportunity represented a chance for patients to obtain better coverage and quality of life. *See* ECF 284 at 6. In other words, the interests of DaVita and its patients were aligned.

9. Florida Blue disputes that DaVita ICs and SWs did not submit applications to Florida Blue, but its counter-evidence shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[3]

11. Florida Blue purports to dispute AKF's independence from dialysis contributors, but the documents cited in opposition show that AKF is not a mere pass-through for DaVita. *See* ECF 284 at 9-12 (explaining that ECF 242-24, 242-26, and 242-27 do not say what Florida Blue claims, and that AKF issued grants to patients without regard to whether a patient's provider was a contributor).

13. Florida Blue concedes that a federal court has explicitly acknowledged that "dialysis providers," such as DaVita, "have long donated to these charities," notwithstanding Florida Blue's complaints that such donations are not "charitable."[4] Florida Blue also ignores its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] The evidence also shows ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* ECF 252-1, Ex. 12 at FLBLUE0002971. Florida Blue is not seeking damages for members on Medicare Supplement plans, so any "prohibition" against TPP in those plans has no bearing on the case.
[4] Florida Blue again mischaracterizes testimony and documents which DaVita addressed in its opposition to Florida Blue's motion for partial summary judgment. *See* ECF 284 at 9, n.7.

3



██████████████████ ECF 252-1, Ex. 9.[5] Unable to dispute its knowledge of DaVita's contributions to AKF, Florida Blue attempts misdirection by regurgitating "facts" from its own motion, which DaVita has addressed. See ECF 284 at 9-14.[6]

14. Florida Blue does not dispute that it regularly provided written approval for its members to use TPP. Instead, it cites to its Platinum Plan, which does not require all patients to pay patient cost-shares, does not prohibit hardship waivers, and does not prohibit TPP. See ECF 252, ¶¶ 26-27; ECF 284 at 4-5. Florida Blue claims that any acceptance of TPP was done "unwittingly or due to isolated violations of Florida Blue's policies by individual employees." ECF 278 at 9. But the record shows a pattern and practice by Florida Blue employees and agents of accepting AKF payments (with Florida Blue's consent), ████████████ ████████████████████████████████████████████████████████████ ████████████████. See 252-1, Exs. 11-20.

22. Florida Blue does not dispute that the standardized and universal UB-04 claim form does not ask for information on the source of a member's premium

---

[5] Florida Blue cites to OIG Advisory Opinion 97-1 and irrelevant deposition testimony for the proposition that "[f]ederal and state law prohibit DaVita and AKF from colluding as described above." See ECF 278 at 8. The OIG Advisory Opinion is just that, an advisory opinion. At most it creates a safe harbor with which DaVita complied. It does not, however, have the force of law and certainly has nothing to do with Florida state law.

[6] While Florida Blue makes much of the high degree of correlation between DaVita's contributions to AKF on the one hand, and AKF's grants to DaVita patients on the other, this should come as no surprise since ████████████████████████████████████████████████████████████ ████████████████████████. See ECF 284 at 10.

4

payment or whether a patient was "steered." Florida Blue incorrectly contends that information provided on the form was false because DaVita engaged in a "systematic waiver of patient cost-sharing amounts," which DaVita has conclusively demonstrated did not occur. *See* ECF 284-1, ¶¶ 6-12.

24. DaVita did not routinely waive patient cost-shares, and it has refuted Florida Blue's repeated and flawed mantra that non-collection must mean systematic waiver. *See* ECF 284-1, ¶¶ 6-12. Florida Blue also fails to acknowledge that DaVita produced over 31,000 patient billing records showing its reasonable efforts to bill and collect from patients. *See* ECF 284-2, ¶ 45.

25. Florida Blue "disputes" that DaVita did not induce members to treat with DaVita by promising to waive their cost-shares. But the documents Florida Blue cites say nothing about waiving patient cost-shares. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* ECF 278-29. The other acknowledges that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ECF 278-30. As Florida Blue itself has pointed out, though, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (ECF 278 at 11) because there are clear objective criteria for eligibility (*see* ECF 252, ¶ 24). And, tellingly, Florida Blue does not cite a single member who was "induced" to treat at DaVita.

27. Florida Blue cannot dispute that its commercial plans did not address TPP until January 2017, and even then, did not prohibit TPP. Florida Blue cross-references pages 8-9 and 13 of its opposition, but pages 8-9 quote from the Platinum Plan, which took effect on January 1, 2017, proving DaVita's point. *See* ECF 252-

5

1, Ex. 30. And page 13 merely points back to pages 8-9. Florida Blue also does not dispute that post-2017 plans, such as the Platinum Plan, gave Florida Blue discretion to accept TPP, which it did. *See* ECF 252, ¶¶ 13-14.

28. Florida Blue merely points back to page 11 of its brief for the proposition that DaVita systematically waived cost-shares. This argument has been fully refuted. *See* ECF 284-1, ¶¶ 6-10.

29. Florida Blue's 30(b)(6) witness was unable to identify any "███████ ██████" of "██████." *See* ECF 252, Ex. 30 (Florida Blue 30(b)(6) Dep. 237:8-239:1). While Florida Blue claims that its efforts to stop TPP for its Medicare Supplement patients had nothing to do with a desire to get its sickest (and most expensive) patients off its rolls, the documents speak for themselves. *See* ECF 252, Ex. 33 at FLBLUE0002888 (████████████████████████████████████████████████████████████████████████████████████████████████████████████); at 2892.

30. As established in DaVita's SOF, ████████████████████████████████████████████████████████████████████████. *See* ECF 252, Ex. 36.

31. Florida Blue does not dispute that its employee Gabe McGlamery stated "████████████████████████████████████████████████████████████████████████████████████████████████." Instead, Florida Blue says he had no decision-making authority, but ████████████████████████████████████████████████████████████████████. *See* ECF 252, Ex. 35.

32. Florida Blue argues that the reason it ████████████████████████████████████████████████████████████████████████. The evidence, however,

6

establishes that one of the reasons was the ▅▅▅▅▅▅▅ of ESRD patients. *See* ECF 252, Ex. 35; *see also* Ex. 36 (explaining ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅).

33. Florida Blue does not deny it received $3 billion under the ACA's risk adjustment program, or that some of that amount was based on ESRD patients, but argues DaVita cannot tie that money to the 915 patients for whom Florida Blue claims damages. But Florida Blue withheld the information necessary to make those specific ties. *See* ECF 152.[7] Moreover, Florida Blue, not DaVita, has the responsibility for properly accounting for those funds in its calculation of damages, and its purported expert Kevin Cornish admitted he did not do so (ECF 248 at 4-5).

34. DaVita cited an ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. Nothing on "pp. 8-9" of the opposition refutes this fact.

## II. Argument

### A. Breach of Contract

After multiple rounds of briefing, Florida Blue still cannot identify any basis in the Provider Agreement for its contract claim. It is undisputed that the contract does not authorize a cause of action for "steering" by DaVita, nor does it prohibit contributions to the AKF. And Florida Blue still cannot point to anything in the UB-

---

[7] The Court recently denied DaVita's motion to compel (ECF 97) production of documents that would have enabled DaVita to make those ties, in part, because Florida Blue falsely represented to the Court that its rate filings are publicly available. *See* ECF 270 at 5. Florida Blue failed to disclose that it **redacted all the relevant rate information from those rate filings**, and the Florida Office of Insurance Regulation has informed DaVita's expert, Jim Galasso, that it cannot release the unredacted rate filings to Mr. Galasso without Florida Blue's consent.

04 universal claim form that was false.

Florida Blue hangs its hat on Section 2.1.1.2, but there is no basis to conclude that rendering Services "in compliance with all Laws" extends to anything other than outpatient dialysis services. Instead, Florida Blue falsely claims that adopting DaVita's interpretation would "nullify" other provisions within 2.1.1, such as 2.1.1.7's requirement that DaVita use "reasonable best efforts to cooperate with and participate in surveys," or 2.1.1.8's requirement that DaVita comply with Florida Blue's "procedures for Insured-eligibility verification." ECF 278 at 16. These provisions do not speak to compliance with laws. Rather, these are contractual obligations DaVita undertook, none of which Florida Blue has alleged DaVita breached. DaVita's interpretation of "compliance with all Laws" does not nullify any other provisions of the contract. The Insurance Fraud Statute ("IFS"), Patient Brokering Statute ("PBS"), and Anti-Kickback Statute ("AKS") were not imported into Section 2.1.1.2's "compliance with all Laws" provision.

### 1.  **Insurance Fraud Statute**

Even accepting Florida Blue's overly-expansive reading of Section 2.1.1.2, DaVita did not violate the IFS. Contrary to Florida Blue's arguments DaVita did not "unlawfully" pay patient premiums, or "systematically waive[] patient cost-shares." Tellingly, Florida Blue cites no case law supporting its novel theory about the meaning of this statute.

As stated above, it is undisputed the contract did not prohibit DaVita from contributing to AKF. DaVita's contributions to AKF and AKF's support for ESRD patients have been publicly known for years, and Florida Blue affirmatively allowed

8

its members to use CPA. *See* ECF 252, ¶¶ 10, 13-14, 21. Florida Blue merely assumes that any instance of non-collection was an improper waiver of cost-shares. But the record shows that (1) ███████████████████████████████████████████████████████████████████████████████████████████; (2) 47.6% of the time, patients had secondary policies that either covered their cost-share or federal law prohibited DaVita from billing the patient; (3) in 10.7% of cases, patients had a partial or full hardship waiver; and (4) DaVita appropriately billed patients, producing over 31,000 billing records in this case (a fact Florida Blue ignores). *See* ECF 284-1, ¶¶ 6-12.

Florida Blue's cited case law is inapposite. *Ruckh v. Salus Rehab., LLC*, involved allegations that the providers billed for more therapy minutes than actually spent, billed for more extensive nursing services than actually provided, and rendered medically unnecessary services. 963 F.3d 1089, 1104-05 (11th Cir. 2020). Here, Florida Blue admits DaVita rendered all the services it submitted claims for (*see* ECF 252, ¶ 23), and has not argued that the dialysis treatments provided were medically unnecessary (nor could it, as ESRD patients would die without dialysis). *Aetna Life Ins. Co. v. Huntingdon Valley Surgery Ctr.*, concluded that whether an out-of-network provider's routine waiver of patient fees was a violation of the Pennsylvania Insurance Fraud statute depended on the language of the billing form and rental contract for billing services. 703 F. App'x 126, 133-34 (3d Cir. 2017). Finally, *Progressive Select Ins. Co. v. Fla. Hosp. Med. Ctr.*, 236 So. 3d 1183 (Fla. 5th DCA 2018) involved an out-of-network provider's "usual and customary charge" (*i.e.*, an amount not set by contract) when the provider allegedly had no

9

intention of collecting cost-shares. Here, the undisputed evidence includes over 31,000 bills sent by DaVita to its patients, clear evidence of its good faith attempts to collect from those patients. Florida Blue has pointed to no specific instances of DaVita improperly waiving patient cost-shares. DaVita did not violate the IFS.

### 2. **Patient Brokering Statute**

Florida Blue concedes that (1) AKF does not refer patients to DaVita and (2) by the time DaVita patients applied for CPA from AKF, they were already treating with DaVita. *See* ECF 252, ¶¶ 8, 12. Nor were patients induced to treat with DaVita by promises of cost-share waivers, as even Florida Blue ████████████ ████████████████. *See* ECF 278 at 11. Nor can Florida Blue point to any instances in which DaVita specifically offered to waive cost-shares. DaVita made reasonable and good faith attempts to collect from its patients, as shown by the voluminous billing records it produced in discovery. *See* ECF 252-2, ¶ 45. Just as fatal is Florida Blue's failure to cite any case law to support its position. Simply put, there were no patient referrals by either AKF or DaVita and no violation of the PBS.

### 3. **Anti-Kickback Statute and Schedule A**

For the reasons set forth in Section II.A.1 and 2 above, DaVita did not violate either the AKS or Schedule A. There were no referrals by either AKF or DaVita. DaVita appropriately billed patients, and in limited circumstances, provided hardship waivers as permitted in Schedule A. It is undisputed that the contract did not require Florida Blue's consent for DaVita to issue hardship waivers and that Florida Blue plans did not have any prohibition against hardship waivers. *See* ECF 252, ¶¶ 19, 26. Member 1 from Florida Blue's Complaint, the only member whom

Florida Blue's 30(b)(6) identified as potentially having had his cost-shares waived, was regularly billed by DaVita for dialysis services (*see id.*, ¶ 28). The fact that Member 1 did not pay is not the equivalent of systematic waiver.

With regard to DaVita's alleged "intentional" waiver of cost-shares, Florida Blue suggests that summary judgment is inappropriate on questions of intent, relying on *Lamarca v. Jansen (In re Bifani)*, 2014 WL 272920, at *5 (M.D. Fla. Jan. 23, 2014). The *Lamarca* court noted, however, that summary judgment was appropriate where the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* (citations omitted). This is such a case. DaVita has demonstrated, without any dispute from Florida Blue, that patients were appropriately billed and that hardship waivers were the exception and not the rule. *See* ECF 284-1, ¶¶ 6-12, ECF 284-2, ¶ 45. DaVita did not violate the AKS or Schedule A. As a result, DaVita is entitled to summary judgment on Florida Blue's contract claim.

### B. Breach of Implied Covenant

DaVita complied with its contractual obligations. As demonstrated above, there was no "waiver of patient cost-shares in virtually every instance" (ECF 278 at 22). Indeed, Florida Blue acknowledges that DaVita ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* at 11. Therefore, DaVita did not abuse any "discretion" it might have had under Schedule A. Nor does Florida Blue identify any "explicit" term of Section 2.1.1.2 that its breach of implied covenant claim "modifies." A "compliance with all Laws" provision does not afford DaVita with discretion. Thus, there was no breach of the implied covenant of good faith and fair dealing, and DaVita is entitled to summary judgment on this claim.

## C. <u>Tortious Interference</u>

DaVita has shown that Florida Blue's member plans did not require patients to pay cost-shares in all instances, as evidenced by Florida Blue's proffered Platinum Plan. *See* ECF 252, ¶¶ 26-27; ECF 284 at 4-5. Nor did plans prohibit members from using CPA or prohibit members from receiving hardship waivers. *Id.* The unrebutted evidence establishes that Florida Blue was aware that its members used CPA, gave them express written approval to do so, and even facilitated its members' use of CPA. *Id.* ¶¶ 13-14.[8] Tellingly, Florida Blue ignores *Oxford Health Plans (N.Y.), Inc. v. Biomed Pharms., Inc.*,[9] which involved a highly similar fact pattern in which the trial court's award of summary judgment in favor of the defendant was affirmed. *See* ECF 284 at 30. DaVita, too, is entitled to summary judgment.

## D. <u>Fraud and Negligent Misrepresentation</u>

Florida Blue ignores the mountain of evidence of its own awareness (as early as 2013, before the contract took effect) and express approval of its members' use of CPA. *See* ECF 252, ¶¶ 10, 13-14. DaVita did not systematically waive patient cost-shares. The evidence shows precisely the opposite. *See supra*, Section II.A.1.

Florida Blue attempts to explain away *UnitedHealthcare of Fla. v. American Renal Associates*, No. 16-81180, ECF 473 (S.D. Fla. Mar. 27, 2018) as "an unpublished district court opinion not available on any legal database." ECF 278 at

---

[8] As for damages, Florida Blue claims it "does not seek as damages the cost-sharing amounts DaVita waived, but rather the amounts Florida Blue paid where its insureds had not satisfied their cost-sharing responsibilities due to DaVita's interference." ECF 278 at 25. But evidence produced by Florida Blue shows there were many instances where patients owed nothing. *See* M. Noether Decl., ECF 284-1, ¶ 6. Therefore, even adopting Florida Blue's flawed liability arguments, Florida Blue's damages for such patients are zero.
[9] 181 A.D.3d 808, 810, 814-15 (N.Y. App. Div. 2020).

12

27. That is beside the point. The case involved the same law firm representing an insurer making identical allegations and claims under Florida law against a dialysis provider. The court correctly found in favor of the dialysis provider on grounds equally applicable here. Florida Blue's argument that the case involved "services" that had been "rendered lawfully" fails to move the needle, as Florida Blue's 30(b)(6) witness admitted that it is not contesting that the services DaVita claimed reimbursement for were actually rendered. *See* ECF 252, ¶ 23.[10]

### E. Civil Conspiracy

Florida Blue does not dispute that civil conspiracy is not a freestanding claim. There is no conspiracy claim without an underlying tort. The evidence shows AKF's grant decisions were independent of whether dialysis providers contributed. *See* ECF 252, ¶¶ 10-12. Florida Blue suggests that circumstantial evidence can show an agreement to support a conspiracy claim, citing *Honig v. Kornfeld*, No. 18- 80019-CV, 2019 WL 1509666, at *3 (S.D. Fla. Mar. 8, 2019). As the *Honig* court acknowledged though, "[although] a conspiracy may be proven by circumstantial evidence, this may be done 'only when the inference sought to be created by such circumstantial evidence outweighs all reasonable inferences to the contrary.'" *Id.* (citations omitted). Here, summary judgment cannot be denied based on a possible inference from circumstantial evidence. There is direct and undisputed evidence that

---

[10] Florida Blue's proffered case law largely deals with cases involving wholly different fact patterns decided on motions to dismiss. *UnitedHealthcare* is the closest case on point and should be followed. DaVita also advances the independent tort doctrine as an alternative argument to the extent Florida Blue is basing its fraud and negligent misrepresentation claims on the same conduct that is the basis of its contract claim. But assuming that the contract does not prohibit the conduct Florida Blue claims it does (*i.e.*, contributions to AKF), there was no fraud or negligent misrepresentation. Florida Blue knew exactly what was going on. *See* ECF 252, ¶¶ 10, 13-14.

13

donations and grant decisions were not linked. *See* ECF 284 at 10, 12 (discussing ███████████████████████████████████████████████████████████).

### F. FDUTPA

*UnitedHealthcare* is squarely on point. The undisputed evidence shows no deceptive conduct that caused Florida Blue "actual damages" under FDUTPA. As DaVita previously explained, the court in *State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, did not engage in any reasoning on whether the statutes are FDUTPA predicates. Instead, it simply assumed – incorrectly – that a M.D. Fla. case concluded that they were predicates. 315 F. Supp. 3d 1291, 1307 n.14 (S.D. Fla. 2018) (citing *Millennium Labs v. Universal Oral Fluid Labs.*, 2012 WL 12905083 (M.D. Fla. Apr. 25, 2012)).[11] These statutes are not *per se* predicates of FDUTPA. *See* ECF 252 at 31 ("[t]aken to an extreme, it would morph almost any Florida criminal statute into a FDUTPA predicate"). For the reasons discussed in Sections II.C and II.D, there was no fraud or deceit. *See* ECF 252, ¶¶ 10, 13-14. DaVita is entitled to summary judgment on the FDUTPA claim.

### G. Unjust Enrichment

Florida Blue does not contest that the Provider Agreement is a valid and enforceable agreement that governs the terms of reimbursement for DaVita's

---

[11] *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs.*, 389 F. Supp. 3d 1137 (S.D. Fla. 2019) and *State Farm Mut. Auto. Ins. Co. v. Complete Care Ctrs.*, No. 6:20-cv-1240, 2021 WL 2946280 (M.D. Fla. July 12, 2021) both involved defendants that did ***not*** dispute that "a violation of section 817.234 is a *per se* violation of FDUTPA." 389 F. Supp. 3d at 1150. These cases are of limited value as DaVita does contest whether the IFS, PBS, or AKS are *per se* predicates of FDUTPA. Further, *Marrache v. Bacardi U.S.A., Inc.*, supports DaVita's position because it dismissed FDUTPA claims for lack of damages and because the complained-of conduct fell into a safe harbor for legally permissible conduct. 17 F.4th 1084, 1097-1101 (11th Cir. 2021).

dialysis services. The unjust enrichment claim fails for this reason alone.[12] While Florida Blue contends that certain alleged conduct, such as "steering" by DaVita, is not covered by the contract, that does not uncouple Florida Blue's claims for unjust enrichment from its contract claim. The terms of reimbursement are expressly covered by the contract, so DaVita is entitled to summary judgment on this claim.[13]

### H. No Damages

Florida Blue does not contest Gabe McGlamery's statement that ▆▆▆▆ ▆▆▆▆ insuring ESRD patients or that it received $3 billion from the ACA's risk adjustment program. Nor could it. The undisputed evidence shows that Florida Blue suffered no damages, and was already well compensated under the ACA for insuring extremely ill ESRD patients. Florida Blue's claims are further belied by the fact that at the time Florida Blue filed this lawsuit in May 2019, there were members treating with FMC who were still receiving CPA from AKF. *See* ECF 252, ¶ 34. This entire lawsuit is a money grab, plain and simple.

### III. Conclusion

For the foregoing reasons, DaVita's Motion for Summary Judgment should be granted.

---

[12] Florida Blue's cited case law does not apply. For instance, *State Farm Fire & Casualty Co. v. Silver Star Health & Rehab*, 739 F.3d 579 (11th Cir. 2013) did not involve a breach of contract claim at all. Here, where there is undisputedly a contract between the parties, there is no need to resort to unjust enrichment to create a quasi-contract to support Florida Blue's claim.

[13] Both *Alberta Ltd. v. Netpaying, Inc.*, No. 8:10-CV-568, 2011 WL 1103635 (M.D. Fla. Mar. 24, 2011) and *Rosado v. Barry Univ. Inc.*, 499 F. Supp. 3d 1152, 1160 (S.D. Fla. 2020) acknowledge that while claims for breach of contract and unjust enrichment can be pled in the alternative, the existence of an express contract between parties defeats a claim for unjust enrichment. Thus, this case law supports DaVita's position, not Florida Blue's.

| | |
|---|---|
| DATED:  March 4, 2022 | */s/ David W. Marston Jr.* <br> David W. Marston Jr. <br> Florida Bar No. 0111636 <br> david.marston@morganlewis.com <br> Valerie M. Toth <br> Florida Bar No. 0123705 <br> valerie.toth@morganlewis.com <br> Morgan Lewis & Bockius LLP <br> 600 Brickell Ave., Suite 1600 <br> Miami, Florida 33131-2339 <br> Telephone:  305.415.3000 <br> Facsimile:   305.415.3001 <br> <br> John C. Dodds (admitted *pro hac vice*) <br> john.dodds@morganlewis.com <br> Brian W. Shaffer (admitted *pro hac vice*) <br> brian.shaffer@morganlewis.com <br> Adina D. Bingham (admitted *pro hac vice*) <br> adina.bingham@morganlewis.com <br> Su Jin Kim (admitted *pro hac vice*) <br> su.kim@morganlewis.com <br> 1701 Market Street <br> Philadelphia, PA 19103 <br> Telephone:  215.963.5000 <br> Facsimile:   215.963.5001 <br> <br> Thomas E. Bishop <br> Florida Bar No. 956236 <br> Bishop & Mills PLLC <br> One Independent Drive, Suite 1700 <br> Jacksonville, FL 32202 <br> (904) 598-0034 / (904) 598-0395 (fax) <br> tbishop@bishopmills.com <br> service@bishopmills.com <br> *Counsel for Defendant DaVita, Inc. f/k/a DaVita Healthcare Partners Inc.* |

16

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on March 4, 2022 via the Court's ECF system.

*/s/ David W. Marston Jr.*
David W. Marston Jr.
